780 F.2d 1020
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
JIMMY LEE CLARK, Petitioner-Appellee,
v.
R. C. MARSHALL, Superintendent, Respondent-Appellant.
 85-3153
 United States Court of Appeals, Sixth Circuit.
 11/27/85
 
 REVERSED AND REMANDED
 N.D.Ohio, 600 F.Supp. 1520
 On Appeal from the United States District Court for the Northern District of Ohio
 Before: KENNEDY and MILBURN, Circuit Judges; and COOK, District Judge.*
 PER CURIAM.
 
 
 1
 Respondent-Appellant, Superintendent of the Southern Ohio Correctional Facility, appeals from the District Court's grant of appellee's petition for writ of habeas corpus. Appellee Jimmy Lee Clark had been convicted of one count of aggravated murder and one count of aggravated robbery, both of which stemmed from the robbery of a gas station in Lake County, Ohio. The basis for the District Court's decision was that two statements by Clark admitted into evidence at trial were obtained in violation of the fifth amendment (as applied to the states through the fourteenth amendment). For the reasons stated below, we reverse.
 
 I.
 
 2
 The relevant chain of events leading to Clark's conviction begins with the Cleveland Police Department's investigation of the robbery of a dry cleaners in Cleveland. Pursuant to an arrest warrant, Detective Robert Tonne took Clark into custody on the dry cleaners robbery charge on December 12, 1975. At 9:30 a.m. the next day, Tonne and police officer Thomas Gibbons brought Clark to an interrogation room for questioning. The officers and Clark disagree whether Clark was read his rights at this time, but it is not disputed that Clark refused to talk and demanded an attorney. The officers then returned Clark to his cell.
 
 
 3
 Meanwhile, three police officers from Willoughby, Ohio--Clifford Collins, Lawrence Reeves, and Kenneth Eisele--were investigating the gas station robbery-murder. They were at the Cleveland Police Station on the morning of December 13, because they were seeking information from the Cleveland police about Clark's whereabouts and they wanted to talk with Robert Burt, a fingerprint expert for the Cleveland Police Department. The Willoughby officers had previously lifted a fingerprint from the cash box at the gas station and matched it with Clark's police file fingerprint. They also had a warrant for Clark's arrest, issued by the Deputy Clerk of the Willoughby Municipal Court. By coincidence the Willoughby officers met up with Tonne and Gibbons at the Scientific Investigation Unit of the Cleveland Police Department Building. Upon learning that the Willoughby officers were seeking Clark, Tonne and Gibbons went by themselves to a Sergeant's room[1] and sent for Clark. They showed him the Willoughby arrest warrant and the matching photographs of the fingerprints taken from Clark's file and from the scene of the crime. Clark then indicated that he wished to speak with the Willoughby officers. Tonne and Gibbons complied with Clark's request. The Willoughby officers entered the room and read Clark his Miranda rights.[2] Clark said he wanted to cooperate and made an inculpatory statement wherein he admitted to participating in the robbery but denied involvement in the murder. When the officers sought to reduce the statement to writing, Clark refused to do so and requested an attorney. At that point, he was returned to his cell.
 
 
 4
 The Willoughby officers then made plans to transport Clark to Willoughby for booking. According to the Willoughby officers, Clark volunteered another statement while in the hallway of the Cleveland Police Department building. He allegedly made a statement describing the gun used in the gas station robbery. When the officers attempted to obtain a written statement, they read him his Miranda rights and he again demanded counsel. No further statements were taken. The state trial court suppressed the oral statement, because it was made pursuant to continued questioning after defendant had requested an attorney at the Cleveland Police Station.
 
 
 5
 A third statement was also excluded at the state trial. During the ride to Willoughby, Collins asked Clark if he would go to the gas station and point out where the crime took place. At the gas station, Clark allegedly made a third incriminating statement. The state trial court excluded this statement for the same reason that it excluded the second statement.
 
 
 6
 The fourth statement was made after Clark was taken to the Willoughby police station, processed and fed. At about 2:30 p.m., as the Willoughby officers were preparing to take Clark back to Cleveland, Clark allegedly told the officers that he again wanted to make a statement and cooperate. The parties dispute whether Clark requested an attorney before making his statement. Clark did execute a copy of the Willoughby police rights form which included an express waiver of the right to counsel. The parties dispute whether Clark was adequately warned that the police could make no promises of lenient treatment in exchange for his cooperation. Clifton Jones, the police prosecutor, arrived and advised Clark of his Miranda rights. The conversation was recorded. Jones explained to Clark that he lacked the power to control a court's disposition of Clark's case. Clark indicated that he understood this. Clark then requested that the recorder be turned off, and made another incriminating statement concerning the gas station crimes. He refused to reduce the statement to writing and demanded counsel. The trial court allowed Reeves to testify about this statement at trial.
 
 II.
 
 7
 Clark was indicted by the October 1975 term of the Lake County, Ohio Grand Jury on one count of aggravated murder and one count of aggravated robbery. A jury found him guilty as charged, and Clark was sentenced to a term of life imprisonment on the murder conviction and seven to twenty-five years on the robbery conviction. The Ohio Court of Appeals for the Eleventh Judicial District affirmed and included an unreported opinion. The Ohio Supreme Court affirmed the conviction, declining to review the trial court's decision to admit the first and fourth statements. The United States Supreme Court denied Clark's petition for writ of certiorari. Clark v. Ohio, 440 U.S. 950 (1979).
 
 
 8
 Clark subsequently filed a petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 with the United States District Court for the Northern District of Ohio. The matter was referred to a United States Magistrate for report and recommendation and the Magistrate recommended that the petition be dismissed. The District Court adopted this recommendation. Clark appealed to this Court, and we reversed the judgment of the District Court holding that, because the state court had failed to make sufficient findings of fact and conclusions of law, the District Court needed to determine whether Clark's first and fourth statements to the police were constitutionally admissible. Clark v. Jago, 676 F.2d 1099 (6th Cir. 1982), cert. denied, 104 S.Ct. 2360 (1984).[3]
 
 
 9
 The District Court held an evidentiary hearing on July 20 and August 7, 1984. In its opinion, the District Court noted that our conclusions about the inadequacies of the factual record in the state proceedings was based upon a 'manifestly incomplete record.' Clark v. Marshall, 600 F. Supp. 1520, 1522 (N.D. Ohio 1985). For unexplained reasons, the record originally before the Sixth Circuit and the District Court did not contain the five-page 'Opinion Re Defendant's Pretrial Motion to Suppress' issued by the state court trial judge. The District Court conducted the evidentiary hearing, nonetheless, giving deference and a presumption of correctness to the findings in the state court opinion, see 28 U.S.C. Sec. 2254(d). After its hearing, the District Court concluded that Clark was denied his fifth amendment right to presence of counsel and that incriminating statements he made while deprived of counsel should not have been admitted before the jury. Accordingly, Clark's petition for writ of habeas corpus on the robbery charge was granted.
 
 III.
 
 10
 The District Court adopted much of the findings and conclusions of the state trial court with respect to the first statement--the one made to the Willoughby police officers at the Cleveland Police Station. The state court found that when Tonne and Gibbons--the Cleveland officers--first tried to question Clark, they read him his rights, he responded that he understood his rights, he refused to talk, and he requested an attorney. The questioning immediately ceased.
 
 
 11
 The District Court held that once Clark requested an attorney, all interrogation of Clark without the presence of his attorney was forbidden, unless Clark initiated the conversation. The District Court based this conclusion of law on a 'crucial sentence' in Miranda: 'If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.' 600 F. Supp. at 1528 (quoting Miranda, 384 U.S. at 474 (1966). Thus, although the District Court sustained the state court's findings that Clark waived his Miranda rights in an intelligent and knowledgable fashion, 600 F. Supp. at 1527-28 ('No evidence presented during the evidentiary hearing conducted by this Court calls the state court's findings on the waiver issue into question'), the District Court held that such findings were irrelevant, because Miranda erects 'a per se rule barring further interrogation after assertion of the right to counsel.' 600 F. Supp. at 1528.
 
 
 12
 Because the District Court improperly held that all interrogation must cease after an accused asserts his Miranda rights, we reverse the decision to grant Clark's writ. The error of the District Court can best be illustrated by noting that the District Court's decision would be correct were the rule stated in Edwards v. Arizona, 451 U.S. 477, reh'g denied, 452 U.S. 973 (1981), applicable to this case. In Edwards, the Supreme Court 'established a new test for when [waiver of the right to the presence of an attorney] would be acceptable once the suspect had invoked his right to counsel: the suspect had to initiate the subsequent communication.' Solem v. Stumes, 104 S.Ct. 1338, 1343 (1984). The Court in Stumes, however, held that the rule announced in Edwards would not apply retroactively to cases on collateral review of a final conviction. Stumes, 104 S.Ct. at 1345-46.
 
 
 13
 The District Court acknowledged that the rule in Edwards does not apply to the police conduct in this case. The court nevertheless found in Miranda and other cases prior to Edwards a per se rule barring interrogation of Clark after he asserted his Miranda rights. The Stumes case, and prior cases from this Circuit, make clear that such a conclusion is erroneous.
 
 
 14
 One of the reasons the Supreme Court chose not to apply Edwards retroactively was that law enforcement authorities had justifiably relied on a prior rule of law that was different from the one announced in Edwards. Edwards 'did establish a new rule.' Stumes, 104 S.Ct. at 1343.
 
 
 15
 Prior to Edwards, the emphasis in our cases had been whether, as an individual, case-by-case matter, a waiver of the right to counsel had been knowing, voluntary, and intelligent. See Johnson v. Zerbst, 304 U.S. 458, 464 (1938). As we said in North Carolina v. Butler, 441 U.S. 369, 374-75 (1979), relying on Johnson and treating the Fifth Amendment right to counsel as a fortiori, '[e]ven when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' There we saw 'no reason to discard that standard and replace it with an inflexible per se rule.' Id., at 375. See also Fare v. Michael C., 442 U.S. 707, 724-25 (1979). . . . It does not in any way cast doubt on the legitimacy or necessity of Edwards to acknowledge that in some cases a waiver can be knowing, voluntary, and intelligent even though it occurred when the police recommenced questioning after an accused had invoked the right to counsel. The Court had several times refused to adopt per se rules governing the waiver of Miranda rights. Michigan v. Mosley, 423 U.S. 96 (1975); North Carolina v. Butler, 441 U.S. 369 (1979). See also Brown v. Illinois, 422 U.S. 590, 603-604 (1975). And while Mosley did distinguish the right to counsel from the right to silence, 423 U.S. at 104, n. 10, much of the logic and language of the opinion could be applied to the invocation of the former. Edwards was not a necessary consequence of Miranda. Thus it could be justifiably believed that a waiver of the right to counsel could be voluntary even if the police intitiated the conversation.
 
 
 16
 Id. at 1343-44. The Court also noted that the state of the law in the lower courts prior to Edwards bears out their conclusion. The Sixth Circuit was acknowledged to be one of 'a number of courts [that] allowed renewed interrogations after a request for counsel.' Id. at 1344 (citing Hill v. Whealon, 490 F.2d 629 (6th Cir. 1974)).
 
 
 17
 The Court's decision in Stumes requires the District Court to confine itself to the question whether, on the facts of this case, Clark's waiver of the right to counsel had been knowing, voluntary and intelligent.[4] As we noted above, the District Court accepted the state court's finding that Clark waived his Miranda rights when he spoke with the Willoughby police officers in Cleveland. There is no reason to overturn this conclusion. When the Cleveland officers confronted Clark with the evidence from the gas station robbery-murder, Clark stated that he wanted to see the Willoughby officers. The uncontradicted testimony of Officer Collins is that there was a delay of approximately ten minutes between Clark's request to speak with the Willoughby officers and his introduction to those officers. It is also undisputed that Collins read Clark his Miranda rights.[5] Clark stated that he understood the warnings and that he wished to talk to the officers. He asked the officers to explain what the photographs meant. After the officers explained how the fingerprints were found, they asked Clark if he would like to make a statement. Clark then began to give an account of the robbery.
 
 
 18
 The District Court noted that the state court's finding of waiver was 'consistent with the court's factual finding that Clark was a literate, seasoned veteran of the criminal justice system who knew his rights, wanted to cooperate with the Willoughby police officers, and did so cooperate.' 600 F. Supp. at 1527. The District Court also noted that the state court's opinion, which, as noted above, was not available to us when we first considered Clark's petition, 'partially quells the Sixth Circuit's 'doubt concerning the application of correct legal standards," 600 F. Supp. at 1527, because the case the state court relied on to decide the waiver issue cites the relevant United States Supreme Court cases 'in an accurate and detailed discussion of principles governing waiver of fundamental constitutional rights.' Id. at 1528.
 
 IV.
 
 19
 Once the District Court had found that the first statement was inadmissible, it stated that the next issue before it was '[w]hether the inadmissibility of the first statement contaminated the otherwise admissible fourth statement.' 600 F. Supp. at 1531. Clark does not dispute the state court's finding that the fourth statement was not the result of an interrogation; rather, Clark, on his own initiative, told the Willoughby officers that he wanted to make a statement. Clark wanted to 'make a deal' with the police. Clark executed a form that included an express waiver of his right to counsel. Police presecutor Jones advised Clark of his Miranda rights and explained to Clark that he could not control the court's disposition of his case. Clark indicated on tape that he understood what Jones had said. Clark then made the incriminating statement.
 
 
 20
 The basis for the District Court's decision that this fourth statements is inadmissible is that the police procurement of three inadmissible statements prior to Clark's fourth statement tainted the fourth statement. In other words, Clark's waiver of his right to counsel was not knowing and voluntary in light of the psychological and practical disadvantages of having already made inculpatory statements that turned out to be illegally obtained.[6] Because we hold that the first statement was legally obtained and therefore admissible at trial, we need not decide the admissibility of the fourth statement. The fourth statement contained the same incriminating facts that were found in the first statement with respect to Clark's involvement in the robbery; thus, the admission of the fourth statement to convict Clark of robbery, if such admission was error, was harmless.[7]
 
 
 21
 Accordingly, we reverse the District Court's grant of the petition for habeas corpus on the aggravated robbery conviction.
 
 
 22
 The case is remanded to the District Court with directions to deny the writ on the robbery charge.
 
 
 
 *
 Honorable Julian Abele Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The interrogation rooms were all occupied
 
 
 [2]
 See Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [3]
 We also determined that the jury instructions on the aggravated murder charge violated the due process clause of the fourteenth amendment and directed the District Court to issue the writ on the murder conviction
 
 
 [4]
 The cases cited by the District Court for the proposition that a per se rule barring further interrogation existed prior to Edwards are all superseded by the language in Stumes. The District Court's opinion implicitly acknowledges that fact by relying on the dissent in Stumes to support the stated proposition. The District Court does attempt to distinguish Stumes by noting that the majority only rejects a per se rule for police-initiated conversations--as opposed to police-initiated interrogations. The language cited, supra, from Stumes contradicts such a narrow reading of that opinion. The Supreme Court concerned itself with ascertaining the pre-Edwards standard where police have recommenced 'questioning,' and found support for its position in lower court cases that permitted 'renewed interrogations.' Furthermore, the dissent clearly felt that the majority's interpretation of pre-Edwards law encompassed questioning and interrogation. The majority did not correct that perception
 Finally, our decision in United States v. Avery, 717 F.2d 1020 (1983), cert. denied, 104 S.Ct. 1683, reh'g denied, 104 S.Ct. 2377 (1984), does not support a finding that the Supreme Court misinterpreted pre-Edwards law in this Circuit. In Avery, we did not need to reach the question whether waiver could be valid when police interrogate an individual who has invoked his Miranda rights, because we found that there was no interrogation. Cf. Rhode Island v. Innis, 446 U.S. 291, 298 n.2 (1980) ('Since we conclude that the respondent was not 'interrogated' for Miranda purposes, we do not reach the question whether the respondent waived his rights under Miranda to be free from interrogation until counsel was present.').
 
 
 [5]
 Collins also testified that Clark interrupted him and said that he knew his rights. Collons, nevertheless, insisted that Clark hear them again and then decide if he understood them
 
 
 [6]
 Of course, in light of our holding, supra, that the first statement was not illegally obtained, the issue is what effect the second and third statements--excluded by the state trial court--had on the knowledge and voluntariness of Clark's waiver of his Miranda rights prior to his fourth statement
 
 
 [7]
 As noted above, this Court has already directed the District Court to issue the writ on the murder conviction, because the jury instructions on that charge were unconstitutional. Although, if the state retries Clark on the murder conviction, the trial court may have to determine, pursuant to Oregon v. Elstad, 105 S.Ct. 1285 (1985), whether the second and third statements tainted the fourth statement, we need not conduct such an analysis with respect to the robbery conviction, because of our finding that the fourth statement was harmless on the robbery charge