THE STATE OF OHIO, APPELLEE, *v.* CONLEY, APPELLANT.

(No. 1312—Decided August 23, 1971.)

*Messrs. Dailey & Dailey,* for appellant.

*Mr. B. Edward Roberts,* prosecuting attorney, for appellee.

COLE, J. 1. In his first assignment of error, the defendant, appellant herein, contends that the indictment fails to charge an offense in that it contains no allegation of knowledge or intent. The charge is brought under R. C. 3719.44 (D), making it a crime to:

"Sell, barter, exchange, or give away, or make offer therefor, any hallucinogen except in accordance with sections 3719.40 to 3719.49, inclusive, of the Revised Code."

The indictment reads in part:

"* * * one Charles Eddie Conley unlawfully then and there did sell an hallucinogen, to-wit: LSD, said sale not being in accordance with Sections 3719.40 to 3719.49, inclusive, of the Ohio Revised Code, contrary to Section 3719.44 D of the Ohio Revised Code * * *."

The indictment was thus substantially in the words of the statute. In R. C. 2941.05, as to the form of indictment, it is said the statement of the offense "may be in the words of the Revised Code describing the offense or declaring the matter charged to be a public offense," and such is here done. Defendant argues, however, that knowledge or intent is a part of the offense as a matter of law and must be alleged even if not set forth in the statute creating the offense. He cites *State* v. *Ross,* 12 Ohio St. 2d 37 and *State* v. *Saylor,* 6 Ohio St. 2d 139, both dealing with the judicial insertion into the crime of "knowingly possessing obscene material" an intent to use, exhibit or sell. The essence of these holdings is that "simple knowing possession" without the intent to use, exhibit or sell under this statute would not constitutionally constitute a crime. The court has so interpreted the statute as to make the specific intent a part of the crime and, since the statute does not explicitly state intent, an indictment in the words of the statute is insufficient.

We do not believe this result in the case of mere possession of obscene materials is applicable to an act of sell-

ing drugs. One concerns the passive holding of property without an intent to use it in any manner affecting the public; the other concerns an active doing of a prohibited act —the selling of a dangerous drug. There is no necessary inference that intent is a part of the crime created by the legislature. The legislature is fully empowered to make such a specific act a crime without respect to intent.

"It is, of course, within the power of the legislature to make an act criminal without regard for the element of intent, and there are many acts which are so destructive of the social order, or as to which the element of criminal intent is so extremely difficult, if not impossible, to prove, that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant." 15 Ohio Jurisprudence 2d 293, Criminal Law, Section 31.

It has been held by the Supreme Court in paragraph 2 of the syllabus in *State* v. *Healy*, 156 Ohio St. 229:

"A statute defining an offense, which is silent on the question of intent, thereby indicates the purpose of the General Assembly to make proof of a specific intent unnecessary, and, therefore, proof of a general intent to do the proscribed act is sufficient; there are no common-law crimes and no common-law criminal procedure in Ohio."

In a case like the one here, where a dangerous drug with unpredictable and hazardous effects is concerned, where one under the influence of such a drug may constitute a menace to others, the legislature may be presumed, in the absence of words requiring specific intent or knowledge, to have intended the prohibition of the act of sale and the placing upon the individual of the responsibility of knowing what it is he sells.

We would hold that there is no specific intent or knowledge required by the statute as elements of the offense, and that it was the intent of the legislature to prohibit the act of selling an hallucinogen and to place on the one engaged in the selling the responsibility for ascertaining that it did not come in the prohibited class. No allegations

of specific intent or guilty knowledge is required, and the indictment in the words of the statute is adequate.

See also *Solomon* v. *Liquor Control Comm.*, 4 Ohio St. 2d 31; *Point Cafe, Inc.*, v. *Board of Liquor Control*, 83 Ohio Law Abs. 225; *Hanewald* v. *Board of Liquor Control*, 101 Ohio App. 375; *Battles* v. *Ohio State Racing Comm.*, 12 Ohio App. 2d 52; *State* v. *Lisbon Sales Book Co.*, 176 Ohio St. 482; *State* v. *Turpin*, 19 Ohio App. 2d 116.

The assignment of error is not well taken.

2. Defendant assigns as error that the arrest and subsequent search of his vehicle were without probable cause and hence invalid. However, no item taken from the auto was introduced as evidence, and the arrest of defendant has been superceded by arrest pursuant to indictment. Exhibit 3, being certain money, was not taken from defendant's car, but was found on the ground in plain sight and was not obtained by virtue of a search of such car.

3. The defendant assigns as error the admission of certain statements made by the defendant to a police officer.

The evidence taken on voir dire examination is clear that the police officer read to the defendant the statements required by the Supreme Court of the United States in the case of *Miranda* v. *Arizona*, 384 U. S. 436. The defendant, about an hour later at the jail, asked a police officer why he was being held, stating the police had nothing on him. The officer said he had been in a car 35 feet from the transaction in the parking lot and watched it. The defendant then *volunteered* the statement: "Well, I guess you got me." Later, he said there were other crimes in Marion of which he knew, and could help solve if they would make a deal. He also said he could tell where 675 LSD pills that he had brought back from Canada were located. The court on preliminary hearing overruled a motion to suppress and, later, an objection to testimony to this effect by the officer.

The defendant denied making the statements, and that he had talked to the officer, and contended he had asked for a lawyer. The evidence was in basic conflict.

The trial court followed the procedure approved and recommended in *State* v. *Perry*, 14 Ohio St. 2d 256 at 266:

"However, as to the future cases, this court prefers the orthodox rule under which the judge himself solely and finally determines the voluntariness of the alleged confession of the accused and the question is not submitted to the jury. * * * ."

The court, if it believed the testimony of the police officer, was justified in finding beyond a reasonable doubt that the defendant received the appropriate *Miranda* warnings and that he volunteered information and in doing so waived those rights. The statements as reported by the police officer were in the nature of volunteered information and were not in response to questioning. The nature of the statements (which were not direct admissions or confessions) and the circumstances under which they were made (if the police officer is to be believed) were such as to justify a finding by the court, beyond a reasonable doubt that the statements were freely and voluntarily given by one fully aware of his rights.

The assignment of error is not well taken.

4. The defendant assigns as error the overruling of certain discovery motions. While a suppression of evidence favorable to the accused constitutes a violation of the right to due process under the decision in *Brady* v. *Maryland,* 373 U. S. 83, there is no allegation or evidence here of any such evidence being suppressed. As far as the record reveals, there was no evidence favorable to the defendant which was in any way suppressed, and there is no suggestion by defendant that such evidence in fact exists.

The defendant asked for a list of all prosecuting witnesses and copies of any statement given by any such witness. He further moved for a commission to take a deposition under R. C. 2945.50. These requests were denied.

A. The court is not required to grant a commission to take depositions under the Revised Code of Ohio, but may exercise its discretion in this area. *State* v. *Hill,* 12 Ohio St. 2d 88; *State* v. *Laskey,* 21 Ohio St. 2d 187. There is, here, no plain abuse of that discretion. Both officers whose dep-

ositions were requested testified at the trial and were subject to extensive cross-examination.

B. ''In the absence of a provision so requiring, the state is not bound to furnish the defendant with the names of its witnesses. * * * .'' 21 American Jurisprudence 2d 355, Criminal Law, Section 32B. There is no statutory requirement currently existing in Ohio to which we have been cited requiring the state to furnish such a list. Therefore, the matter was entirely within the discretion of the trial court, and there is no indication that there was an abuse of that discretion. The defense obviously knew the names of the main law officers involved (see request above) and, in the bill of particulars, was informed of the name of the informer who would testify. See also *State* v. *White,* 15 Ohio St. 2d 146. *State* v. *Laskey, supra.*

The assignment of error is not well taken.

5. The defendant contends the judgment of the trial court is against the weight of the evidence and contrary to law in two particulars.

The first concerns the admitting into evidence of certain exhibits—Exhibit 1 being a brown envelope containing a cellophane sack (a cigarette container) and in which were 18 pills of an orange coloring and Exhibit 3 being three marked bills of United States currency.

The problem here is essentially one of identity. If an exhibit is directly identified by a witness as the object which is involved in the case, then that direct identification is sufficient. Such is the case with many objects which have special identifying characteristics, such as a number or mark, or are made to have such identifying characteristics by special marks. However, where the objects are more or less interchangeable and have no special characteristics, the problem of establishing identity usually involves some evidence as to a chain of custody. One dollar bill, except as to its serial number, looks like any other dollar bill and positive identification is difficult. One white pill looks much like any other white pill and hence positive identification simply by observation is usually impossible. To identify a particular item of this type as being

part of a pertinent incident in the past usually requires the showing of a continuous chain of custodians up to the material moment. When a chemical analysis is involved, as here, the material moment is the moment of analysis, since this provides the basis for the expert testimony and makes that testimony relevant to the case. In the case of many other items, the material moment occurs at the trial.

Here, as to the money which allegedly was paid for the LSD pills, the pertinent moment is the trial and, as we read the record, a complete chain of custody is established either by inference or direct testimony from the moment the money was marked and given to Jenkins, the informer, through his use of it to purchase pills from the defendant and its ultimate return to the sheriff.

The bills were marked with ultraviolet ink with initials and the date and the serial numbers were recorded by the sheriff's office. The numbers of the bills composing Exhibit 3 were compared, and there was direct testimony that the numbers were the same. There was, therefore, positive and direct identification of Exhibit 3 as the bills used. These were given to Jenkins. Jenkins stated he so received the money; that he gave the $40 to the defendant for the pills; and that he held it up to look at it. A police officer saw the defendant look at the money or bills. Then, he stated, defendant put money in a car nearby and testified: "It looked like he put money in the car. He had something in his hands and he put it in the window." A James McKeever was in this car. A second officer testified that as McKeever was arrested money fell to the ground. He (the officer) picked up the money and put it in an envelope. It consisted of a twenty dollar bill and two tens. The envelope was sealed and turned over to a Captain Severns. He noted the numbers on the envelope and sealed it. A comparison of the numbers identified the bills as the ones he received. The numbers were identical with those of the bills which were identified as being handed to Jenkins. These were the bills marked Exhibit 3. The chain is complete, and it cannot be said as a matter of law that the bills were not properly identified.

As to the pills, a somewhat different question is presented. The important connection here is to establish that the pills sold by the defendant to Jenkins were the pills analyzed at the bureau of criminal identification and investigation (hereinafter referred to as BCI) and found to be LSD. The subsequent custody and presentation into evidence is not as important as the critical moment—the moment of the chemical analysis which formed the basis for the expert's subsequent testimony.

Jenkins testified that he bought the pills placed in a cellophane wrapper from a cigarette pack; that they were orange type; that Exhibit 1 was the same kind of wrapper and the same kind of pills (from which it can be inferred they were of the same size, shape and color). He further stated that he put the pills which were so enclosed in his helmet. These were later given to an officer.

The officer states he took the helmet from Jenkins, removed the pills contained therein and placed them in his jacket pocket; that Exhibit 1 looked like the pills and container; and that the pills and wrapper were turned over to a Capt. Severns. Severns put certain writing (that 20 orange sunshine pills were in a cellophane wrapper) on a property envelope (this was positively identified), and placed the pills and wrapper therein after having received them from Officer Tidd. It was taken by him to the BCI and given to a man in the laboratory.

Mr. Rector, the BCI chemist, testified that the envelope was obtained by him from a filing cabinet in the laboratory, that it then bore a BCI case number, and that he put his initials both on the outside envelope and on the cellophane wrapper. It then contained twenty orange tablets in the cellophane wrapper. He used up two pills in analysis. After the analysis, the remaining pills, the wrapper, and the envelope were placed in a sealed envelope and kept in a locked storage area. He then brought the sealed envelope to the trial.

It is immediately apparent that there is a complete chain of custody or other evidence of identity with the possible exception of the period between the delivery of the

property envelope and its contents, by Severns, to an unidentified person in the BCI laboratory and the moment Rector took this envelope from a file drawer. There is no direct testimony by the person or persons who received the envelope with its contents and placed it in this drawer.

However, direct testimony as to custody is not the only way that identity may be established. It may also be established by inference. In this case the inferences of identity are very strong. They are as follows:

(1) The brown envelope composing the outside wrapper was positively identified by the writing upon it;

(2) The contents were identical in description in that

(a) there were twenty pills of the same size and shape,

(b) all pills were orange in coloring, and

(c) the pills were in a cellophane wrapper of a cigarette pack;

(3) The pills and wrapper are stated by all witnesses to be similar to those received from defendant; and

(4) The uncontradicted testimony by Rector as to standard operating procedure states that when such material is brought in it is assigned a case number by an evidence coordinator and placed by him in the file of the appropriate section, and the chemist takes the material bearing the case number from the file and processes it.

From this it may be inferred that the pills examined by Rector were the same pills brought in by Severns and the chain of identity was thus established. We cannot say as a matter of law that a jury could not determine such identity beyond a reasonable doubt. The question involves the weight to be assigned the inferences and not their absolute inadequacy as a matter of law, which would preclude a reasonable doubt.

It is our conclusion that the first part of this assignment of error is not well taken.

In the second part of this assignment of error, it is urged that the judgment is contrary to law because the state failed to prove the negative averment of the indictment.

In *Hale* v. *State,* 58 Ohio St. 676, in paragraph 4 of the syllabus, it is said, as to negative averments:

"Where an exception or proviso in a criminal statute is a part of the description of the offense, it must be negatived by averments in the indictment in order to fully state the offense; but when its effect is merely to except specified acts or persons from the operation of the general prohibitory words of the statute the negative averment is unnecessary."

In *Krusoczky* v. *State,* 108 Ohio St. 430, it is said, at page 434:

"Unless an exception or proviso is a part of the description of a criminal offense, it need not be pleaded or proved by the state, but is a matter of defense"

In the instant case the offense is the sale of an hallucinogen. The exceptions are essentially an exclusion from such section of a licensed manufacturer, pharmacist, physician, etc. The exceptions are not part of the definition of the crime but are a part of an immunity granting device, separate from the described crime, used to assure that certain classes will not be included in the scope of the prohibition. This is properly a matter of defense, and there is no requirement that the prosecution prove the defendant is not a member of the excepted classes.

In the case of *State* v. *Dutton Drugs, Inc.,* 3 Ohio App. 2d 118, there is an excellent summary of the Ohio cases establishing the basic principles. However, in that case the defendant was charged with selling certain medicinal drugs when he was not a registered pharmicist. The statute, R. C. 4729.28, is a part of the provision for licensing pharmacists and constitutes the major enforcement provision for such licensing since without the license no one can sell drugs, chemicals, poisons or pharmaceutical preparations. The gist of the crime is not *being a licensed pharmacist.* Here, the gist of the crime is the *selling of a certain type of drug which is forbidden to be sold by anyone,* but with certain exceptions being permitted where a legitimate use of the drug may be involved. Here, we are not concerned primarily with the profession or occupa-

tion of the defendant but with the act of selling a certain article. The exception as to occupation or profession is secondary, incidental and not a part of the crime itself. It merely exempts certain classes from the general prohibitions.

See, also, *State* v. *Culp*, 32 Ohio App. 2d 39.

The assignment of error is not well taken.

6. The method and procedure for the examination of the veniremen in selecting the jury is properly a matter for the sound discretion of the court. There is no abuse of that discretion established, and this assignment of error is not well taken.

7. This assignment of error deals with evidence of prior similar offenses. The court properly instructed the jury as to evidence of prior offenses. The evidence went to establish absence of mistake and the general intent to sell the drug involved and as such was pertinent. This assignment of error is not well taken.

8. The defendant assigns several miscellaneous errors in this assignment. We find as follows:

(A) The record fails to sustain his contention that the judge exhibited partiality to the prosecution;

(B) Objection is made to reopening the prosecution's case, but this was not done, and there was no prejudice;

(C) Objection is made to a purported violation of the order to separate witnesses, but the matter was within the discretion of the trial court, and no abuse of that discretion is apparent; and

(D) We have examined the other matters set forth under this assignment of error and find no error prejudicial to the defendant.

*Judgment affirmed.*

GUERNSEY, P. J., and TROOP, J., concur.

TROOP, J., of the Tenth Appellate District, sitting by designation in the Third Appellate District.