[Cite as *State v. Baker*, 2011-Ohio-1820.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee                  :       C.A. CASE NO.    23933

v.                                      :       T.C. NO.    09CR1985

ROBERT LEE BAKER                        :       (Criminal appeal from
                                                Common Pleas Court)

    Defendant-Appellant                 :

                                        :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the   15th   day of    April   , 2011.

· · · · · · · · · ·

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

RICHARD A. NYSTROM, Atty. Reg. No. 0040615, 1502 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1}  Robert Lee Baker was found guilty by a jury in the Montgomery County Court of Common Pleas of three counts of rape of a child under the age of ten, three counts of sexual battery (parent/child) of a child under the age of thirteen, and three counts of gross sexual imposition of a child under the age of thirteen; he

was sentenced accordingly. He appeals from his convictions. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} Baker is the victim's father, and he is divorced from the victim's mother. In June 2009, when the victim was eight years old, the Dayton police received a tip by phone that the victim was being sexually abused by her father, with whom she visited on the weekends.[1] After questioning the victim, the police referred her to CARE House, where she was interviewed by a social worker. The social worker's interview with the victim was videotaped.

{¶ 3} In her interview with the social worker, the victim stated that her father had digitally penetrated her vagina (which she also referred to as her "front private parts"), had put his penis into her vagina and "anal area," had made her touch his penis and engage in fellatio, and had touched her chest. She stated that no one other than her father had done these things to her, and that this activity had occurred "all the time" when she visited him on the weekends. The victim also expressed that she loved her father and missed seeing him.

{¶ 4} On August 14, 2009, Baker was indicted on three counts of rape of a child under the age of ten, three counts of sexual battery (parent/child) of a child under the age of thirteen, and three counts of gross sexual imposition of a child under the age of thirteen. Before trial, the trial court found the victim competent to testify. The court also overruled Baker's motion in limine to exclude the social

---

[1] The identity of the caller was not revealed, but the officer who talked with the caller testified that it was not the victim's mother, "the voices [were] totally different." The mother also denied that she had been the caller or had known about the call before the police contacted her.

worker's testimony because the statements made to her by the victim were not offered for the purpose of medical diagnosis or treatment and overruled, at least in part, Baker's motions in limine to exclude his medical records entirely, or at least those records prior to the dates contained in the indictment. The case was tried to a jury in February 2010.

{¶ 5} In the State's case-in-chief, the victim recounted her father's sexual abuse. The social worker testified very generally about her interview with the victim and, during this testimony, portions of the videotaped interview with the victim were played for the jury. Various police officers, medical personnel, and medical experts also testified. The State presented evidence that the victim had contracted chlamydia, a sexually transmitted disease, and that Baker had been symptomatic and had been treated for a sexually transmitted disease, although lab tests did not confirm the presence of chlamydia.[2] In response, the defense presented evidence that the victim did not have a reputation for truthfulness and Baker testified on his own behalf, denying that he had abused the victim.

{¶ 6} Baker was convicted on all of the counts in the indictment. He was sentenced to life without parole on each count of rape, to be served consecutively, to eight years on each count of sexual battery, to be served consecutively to each other but to be merged with the counts of rape, and to five years on each count of

---

[2] Pursuant to a search warrant, Baker was tested for chlamydia at Miami Valley Hospital. However, the nurse testified that she had performed both tests for the infection improperly; she explained specifically how these errors may have created "a false negative" test result. She also testified that Baker was treated with an antibiotic that would "erase the chlamydia" from his system.

gross sexual imposition, to be served consecutively to each other and to all the other counts.

{¶ 7} Baker raises one assignment of error on appeal. The assignment of error states:

{¶ 8} "***THE TRIAL COURT ERRED IN ADMITTING TESTIMONY OF THE ALLEGEDLY MOLESTED CHILD THREE TIMES – ONCE BY VIDEO, AGAIN BY THE INTERVIEWER, AND A THIRD TIME LIVE – AND THEREBY GIVING UNDUE EMPHASIS OF SAME SO AS TO COMPROMISE DEFENDANT'S CONSTITUTIONAL RIGHTS TO A FAIR AND UNBIASED TRIAL AND DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION."

{¶ 9} Baker claims that his rights to due process and a fair trial were violated by the repetition of the victim's accusations against him via her live testimony, the CARE House social worker's testimony about the abuse recounted to her by the victim, and the playing of a videotape of the social worker's interview with the victim. He claims that this testimony violated Evid.R. 403(A), which requires the exclusion of evidence, even if it is relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice." He also contends that the use of the video and the social worker's testimony "made cross-examination of [the victim's] live testimony impossible for all practical purposes," and created a "catch-22" requiring him to give up his right to remain silent and testify on his own behalf.

{¶ 10} We note that the playing of the victim's interview with the social worker at the beginning of trial, before the victim had testified herself, constituted the introduction of inadmissible hearsay, because the statements were not made by the declarant at trial and were offered to prove the truth of the matter asserted. Evid.R. 802 and 803(C). Further, since the victim was available and did testify, Evid.R. 807 is not applicable.

{¶ 11} We cannot know whether Baker might have offered the victim's prior statements, even if the State had not, under the theory that they were inconsistent (to a limited extent) with her testimony at trial, and thus supported his theory that the victim had been coached. Evid.R. 801(D)(1)(a). Rather, it appears that the tape of the victim's out-of-court statement was offered to show it was consistent with her in-court testimony. As such, it could only be offered, perhaps preemptively since the defense theory was known, to "rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Evid.R. 801(D)(1)(b). In any event, Baker did not object on hearsay grounds to the use of the taped interview, nor has he raised this issue on appeal. Even if this were plain error, which we do not find for the reasons discussed more fully below, any error was harmless.

{¶ 12} With respect to Baker's argument that the testimony was cumulative, he does not challenge, individually, the social worker's testimony, the use of the video, or the victim's live testimony. He acknowledges that the information obtained from the victim by the social worker was obtained for the purpose of treatment or diagnosis, and thus was admissible under Evid.R. 803(4). He

concedes that the trial court thoroughly assessed the victim's competency and understanding of the difference between true and false statements before she testified. And he asserts that the video was "better evidence" than the social worker's testimony; he complains about it only on the basis that it was repetitive. He contends that the State should have used only one, or possibly two, of these forms of testimony; "three times was unconstitutional."

{¶ 13} Baker did not object at trial to the prejudicial nature of the cumulative testimony or of the evidence individually; he did file a pre-trial motion to exclude the social worker's testimony, but only on the basis that it was hearsay because the victim's statements had not been for the purpose of medical diagnosis and treatment. After a hearing, the trial court concluded that the testimony was admissible and overruled this motion. At the pre-trial hearings, Baker did not raise any other objections to the social worker's testimony, the recording, or to the potential for repetitious testimony. When the State sought to play the tape of the interview at trial, Baker's attorney stated, at sidebar, only that he "object[ed] to the tape for reasons we've already talked about." Therefore, he has waived all but plain error.

{¶ 14} In order to find plain error, there must be a deviation from a legal rule, the error must be an "obvious" defect in the trial proceedings, and the error must have affected a defendant's "substantial rights." *State v. Dixon*, 152 Ohio App.3d 760, 2003-Ohio-2550, ¶21, citing *State v. Barnes* (2002), 94 Ohio St.3d 21, 27. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.

{¶ 15} The admission or exclusion of evidence is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Morales* (1987), 32 Ohio St.3d 252, 257; *State v. Simpson*, Montgomery App. No. 19797, 2004-Ohio-669. An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶129-130.

{¶ 16} Pursuant to Evid. R. 403(B), it is within the sound discretion of the trial court to exclude evidence when the probative value of the evidence is substantially outweighed by considerations of undue delay or needless presentation of cumulative evidence. The mere fact that evidence is repetitive will not be considered reversible error unless the defendant was unfairly prejudiced thereby. *State v. Smith*, 80 Ohio St.3d 89, 108-109, 1997-Ohio-355; *State v. Feaster*, Summit App. No. 24367, 2009-Ohio-2558, ¶24; see, also, *State v. Boler*, Athens App. No. 09CA24, 2010-Ohio-3344, ¶74-75. The pertinent question is whether the evidence was unfairly prejudicial to the defendant, not whether it was unfavorable to him.

{¶ 17} Although Baker contends that the video of the victim's interview with the social worker and the social worker's testimony about the interview were cumulative, a review of the record does not support this claim. The social worker laid the foundation for the video; she briefly summarized – in three sentences – the acts of sexual abuse that the victim had recounted; then the videotape of portions of the interview was played, wherein the victim described with greater specificity the types of sexual activities in which she had engaged with her father. In our view,

this evidence was not cumulative.

{¶ 18} The victim's accounts of Baker's sexual abuse – whether to the social worker or at trial – were clearly relevant to the offenses for which Baker was indicted, and thus admissible in the absence of any legitimate reason to exclude them, such as unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 402 and 403. At trial, Baker did not object on any of these bases. Moreover, Baker did not dispute that the victim had been sexually abused; his theory of the case was that someone else had committed the abuse. When Baker testified at trial, he denied engaging in any type of sexual activity with the victim and stated that the accusations against him were rooted in his visitation problems with his ex-wife, the victim's mother. He presented evidence, through the testimony of the victim's paternal grandmother, that the victim's "reputation as for truthfulness" was "not very good."

{¶ 19} Baker's theory of defense from the beginning of the trial was that the victim's statements should not be taken at face value. For example, in his opening statement, Baker's counsel said "[t]he question that's always out there, in every single one of these cases, is are these accusations real or are they coached?" Baker continued this theme in closing argument, where he stated that the social worker's statements during the interview with the victim, when examined carefully, "started out as open-ended questions, [but] turned out not to be open-ended;" the victim "was led to all of the answers all the way through the tape." He pointed to medical evidence that was "consistent with fabrication." He also asserted that the victim's account and the terminology she used to describe the alleged abuse had

changed over time "so someone taught her. So there's coaching go on [sic] here somewhere." Baker concluded that the "adult terms" used for the first time by the victim at trial confirmed that, in the interim, she had been talking with adults about the alleged abuse. And "[h]ow easy it is to program an eight-year-old. How very easy it is."

{¶ 20} The State argues that, insofar as Baker's defense relied on the social worker's alleged coaching of the victim and on the changes in the victim's testimony over time, he cannot be heard to object to the examination by the jury of her various accounts of the abuse. The State relies on *State v. Cullay* (Mar. 12, 2002), Franklin App. No. 97AP-1590, wherein the court held that allowing a jury to repeatedly listen to a confession did not unduly emphasize evidence favorable to the State where that confession, which the defendant had sought to discredit at trial, was also the center of the defense's strategy.

{¶ 21} In our view, the repetition of part of the victim's allegations was not an obvious defect in the proceedings and did not affect Baker's substantial rights. The victim's allegations of abuse were probative of his guilt, and the consistency or inconsistency with which she was able to recount his behavior over a period of time and the manner in which she described it were relevant to the victim's credibility and to Baker's theory that she was fabricating facts and had been coached to testify as she did. Likewise, the presentation of a portion of the videotape of the social worker's interview with the victim played a role in Baker's defense, insofar as he asserted that the social worker's manner of questioning the victim had directed the victim's account.

{¶ 22} We find that the danger of unfair prejudice from the presentation of the victim's live testimony, her recorded statement, and the social worker's brief description of her interview with the victim did not substantially outweigh the probative value of the evidence. The admission of this evidence did not prejudice Baker's substantial rights, and thus was not plain error. The record simply does not support Baker's claim that he was unfairly prejudiced by the introduction of the victim's account in various forms and at various times. Moreover, the doctrine of cumulative error does not apply because Baker has not identified multiple instances of harmless error. *Garner,* 74 Ohio St.3d at 64.

{¶ 23} Although unrelated to the stated assignment of error, Baker also contends that there was "questionable juror misconduct" at trial because one of the jurors had not disclosed in voir dire that she had personal knowledge of a similar case where a father had been accused of sexually abusing his child; in that situation, the father had later been found to be "innocent."[3]

{¶ 24} When the juror's comments during deliberations came to the court's attention, defense counsel requested a mistrial, but the parties agreed that the trial court should question the juror. When questioned, the juror stated that she could be fair and impartial. The State pointed out that the bias, if any, arising from the juror's knowledge of another case in which the father was exonerated, would be

---

[3] Voir dire was not transcribed. During the discussion of the juror's alleged bias in chambers after jury deliberations had begun, the prosecutor stated that he had asked potential jurors during voir dire whether "a close family member or close friend" had ever been connected with a sexual abuse case. In response to that question, the juror had not disclosed her relationship to the "similar case" that she mentioned during deliberations. Because the juror's connection with the other case is unclear, the record does not disclose whether this connection should have been divulged in voir dire.

against the State. The trial court overruled Baker's motion for a mistrial.

{¶ 25} In his brief, Baker contends that "the interview of the juror removed any chance" to "challenge the ruling and the verdicts on the basis of juror misconduct." One interpretation of this argument is that Baker contends that the interview with the juror, in itself, was prejudicial. Another interpretation is that Baker concedes there was no error in the court's handling of this matter and, as such, recognizes that the trial court's correct handling of the matter precluded assigning this conduct as error. We will assume, for the sake of argument, that Baker alleges error in the questioning of the juror.

{¶ 26} Baker expressly agreed to have the juror questioned by the judge, so he has waived any error in this regard. Also, such an inquiry is the proper procedure when the completeness of a juror's answers in voir dire or a juror's impartiality is questioned. See *Jenkins v. Bazzoli* (1994), 99 Ohio App.3d 421, 426-427; *State v. Jones* (Sept. 12, 1997), Montgomery App. No. 16123. Trial courts have discretion in determining a juror's ability to be impartial. *State v. Williams* (1983), 6 Ohio St.3d 281, 288.

{¶ 27} The trial court did not abuse its discretion in this instance, where the juror expressly stated her ability to judge this case on its own facts and where any bias arising from the juror's familiarity with the other case would just as likely have favored the defense. The trial court's appropriate interview with a juror to confirm her impartiality was not prejudicial to the defendant.

{¶ 28} The assignment of error is overruled.

{¶ 29} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

R. Lynn Nothstine
Richard A. Nystrom
Hon. Gregory F. Singer