[Cite as *State v. Bursey*, 2021-Ohio-2857.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28976 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-3539 |
| | : | |
| CHARLES E. BURSEY, III | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of August, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Charles E. Bursey, III appeals from his convictions for having weapons under disability and possession of drugs. Bursey claims the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. He further claims that the trial court erred by overruling his motion to suppress and abused its discretion regarding the admission of evidence. Finally, Bursey contends his trial counsel was ineffective.

{¶ 2} Because we find no merit to Bursey's arguments, the judgment of the trial court is affirmed.

## I.    Facts and Procedural History

{¶ 3} On September 6, 2019, Trotwood Police Officer Roger Hoff travelled to Sheikhs Bar and Grill to perform a permit check, which he described as a routine check frequently done by the police department to ensure that local bars are in compliance with their permits and to deter illegal activity. Hoff parked his cruiser in the tavern's parking lot and walked toward the entrance to the bar. At that time, he noticed a Jeep that was backed into a parking spot but still running. As he passed the front of the Jeep, Hoff observed a man lying back with his head slumped forward and his eyes closed. The man, later identified as Bursey, appeared to be asleep or possibly unconscious. Hoff shined his flashlight through the windshield, but Bursey did not react.

{¶ 4} Hoff then went to the back of the car and called in the license plate number for a vehicle check. He also called for backup. Hoff then went to the passenger window to determine whether the car was in park and whether Bursey's foot was on the brake. As Hoff shined his flashlight through the passenger window, he noted Bursey still failed

to react. Hoff also observed a Glock handgun with an extended magazine in Bursey's lap.

{¶ 5} Hoff moved toward another vehicle and positioned himself so that he would not be harmed if the Jeep moved or the gun discharged. As backup arrived, Hoff noted Bursey began to move. Hoff observed Bursey leaning forward and down as if attempting to conceal something. Bursey was exiting the car when he noticed Hoff and the other officers, all of whom had their service weapons drawn. Bursey complied with instructions to keep his hands visible. One of the assisting officers placed handcuffs on Bursey. When Hoff approached the vehicle, he smelled the odor of marijuana emanating from within. No other occupants were in the car.

{¶ 6} A search of the Jeep was conducted. The gun, with an inserted magazine, was located under the front driver's seat. The gun had a bullet loaded in the chamber, and the magazine contained 31 rounds of ammunition. The gun was later determined to be fully operable. Clear gel caps, which Hoff suspected contained heroin, were located in the driver's side door compartment and the glove box. The substance in the capsules was tested by a forensic scientist employed by the Ohio Bureau of Criminal Investigation (BCI). All of the capsules contained heroin and fentanyl. One of the capsules also contained cocaine. Sixteen of the capsules also contained acetyl fentanyl.

{¶ 7} On December 3, 2019, Bursey was indicted on one count of having weapons under disability in violation of R.C. 2923.13(A)(3), one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), one count of possession of heroin (10-50 unit dose) in violation of R.C. 2925.11(A), and one count of possession of

cocaine (less than 5 grams) in violation of R.C. 2925.11(A). Bursey filed a motion to suppress evidence in January 2020. Following a hearing, the trial court denied the motion.

{¶ 8} The matter proceeded to trial in October 2020. Hoff testified to the above-cited facts, while the forensic scientist who tested the capsules provided testimony regarding her testing and the results thereof. Further, the State presented the testimony of a criminal investigator who testified regarding recorded telephone calls made by Bursey while he was in jail awaiting trial.

{¶ 9} Bursey also testified at trial. According to Bursey, he had been in the Jeep with friends during the course of the day prior to going to Sheikhs. Bursey testified that his girlfriend had been driving. He testified that they parked at the bar and the others went inside. However, Bursey testified that he was feeling drowsy and decided to remain in the vehicle; he began to get hot so he crawled into the driver's seat and turned the Jeep on so that the vehicle's air conditioner could be activated. Bursey testified that he fell asleep but had awakened and was exiting the Jeep to go into the bar when the police officers confronted him.

{¶ 10} Bursey further testified that the Jeep did not belong to him and he did not have a gun in his lap when he fell asleep in the vehicle. Bursey testified that he normally keeps his two cellphones in his lap whenever he is sitting in a car, and that Hoff may have seen the phones and thought they were a gun. However, Bursey admitted that he did not remember whether the phones were actually in his lap at that time.

{¶ 11} Following the trial, the jury convicted Bursey on all the charges except for the charge of improper handling of a firearm in a motor vehicle. The trial court sentenced

him to an aggregate prison term of 12 months.

{¶ 12} Bursey appeals.

## II.   Motion to Suppress

{¶ 13} In his first assignment of error, Bursey asserts:

THE TRIAL COURT ERRED WHEN IT OVERRULED BURSEY'S MOTION

TO SUPPRESS THE EVIDENCE.

{¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

{¶ 15} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.   *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 16} One of those exceptions is the plain view doctrine, which permits a

warrantless seizure of incriminating evidence when "(1) the officers are lawfully positioned in a place from which the object can be plainly viewed, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *State v. Garrett*, 2d Dist. No. 27630, 2018-Ohio-4530, 123 N.E.3d 327, ¶ 22, quoting *State v. Goode*, 2d Dist. Montgomery No. 25175, 2013-Ohio-958, ¶ 26, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) and *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

{¶ 17} In this case, there is no doubt that Hoff was lawfully permitted to view the interior of the Jeep. As Hoff was walking through the parking lot toward the entrance of the bar, he glanced into the front of the Jeep and noted that the lone, male occupant appeared to be either asleep or unconscious while the vehicle was running. Hoff then shined his flashlight, which he described as being more powerful than average, through the windshield and noted that Bursey did not react. Hoff decided to conduct a check on Bursey to make sure he was not unconscious due to a medical problem or intoxication. Hoff also testified that he had a concern for the general safety of the public because Bursey appeared to be asleep or unconscious in a running car in a parking lot; Hoff wanted to look in the passenger window to ensure the vehicle was in park. When Hoff again shined his flashlight and looked in the passenger window, he again noted that Bursey did not react.[1] He further observed what he recognized as a Glock firearm with

---

[1] Hoff used a flashlight to illuminate the interior of the vehicle. But "use of a flashlight by a police officer does not negate the fact that an item is otherwise in plain view or that its discovery is inadvertent." *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *5 (Jan. 18, 2002), quoting *State v. Ward*, 2d Dist. Montgomery No. 14186, 1994 WL 645964 (Nov. 16, 1994); *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

an extended magazine in Bursey's lap.[2]   At this point, Hoff was outside of Bursey's vehicle in a place he was permitted to be, conducting a brief check on Bursey's well-being and ensuring the safety of the general public.   This minimal intrusion, if any, was legitimate, and it created a sufficient basis to permit Hoff to investigate further.

{¶ 18} Hoff testified that, after he observed Bursey's failure to react to the flashlight and the handgun in Bursey's lap, he wanted to investigate whether Bursey was violating R.C. 4511.194(B)(2), which provides that "[n]o person shall be in physical control of a vehicle * * * if, at the time of the physical control, * * * [t]he person's whole blood, blood serum or plasma, breath, or urine contains at least the concentration of alcohol specified in division (A)(1)(b), (c), (d), or (e) of section 4511.19 of the Revised Code."   " 'Physical control' means being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key or other ignition device."   R.C. 4511.194(A)(2).   Hoff also testified that Bursey's possession of the gun raised an issue as to whether Bursey was in violation of R.C. 2923.16(B), which states, "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

{¶ 19} Another of the recognized exceptions to the warrant requirement is an investigative detention, commonly referred to as the *Terry* stop.   Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot.   *Id.* at 21.   Reasonable suspicion entails

---

[2] Hoff testified he is a certified firearms instructor and has more than 300 hours of firearm training in addition to his regular training.

some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist.1990), citing *Terry* at 27. Upon observing Bursey asleep or unconscious with what appeared to be a loaded handgun in the parking lot of a bar, Hoff had reasonable suspicion, at the very least, to conduct a *Terry* investigative detention.

{¶ 20} As stated, as backup officers arrived, Bursey began to move around inside the vehicle, and he moved in such a manner as to cause Hoff to think he was attempting to conceal something. Bursey then exited the car of his own accord before noticing the officers. According to Hoff, when he approached the Jeep, he noted the smell of marijuana emanating from within it.[3] The odor of marijuana provided both suspicion that Bursey, who was the only occupant, was in possession of marijuana and that the contraband was located in the vehicle. "The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000), syllabus.

{¶ 21} Based upon the record before us, we conclude that the trial court did not err in finding that Hoff's search of the vehicle was legally permitted. The plain-view observation of the handgun on Bursey's lap, as well as the observation that Bursey was non-responsive in a bar parking lot, established probable cause to enter the vehicle to seize the gun. However, before Hoff could do so, Bursey exited the vehicle of his own accord. When Hoff approached the Jeep, he smelled marijuana, which established

---

[3] Hoff testified that he is familiar with the smell of both raw and burned marijuana as a result of his involvement with multiple law enforcement task forces. The trial court specifically found Hoff's testimony credible, and we find no basis to disagree.

probable cause to search the vehicle.

{¶ 22} Accordingly, the first assignment of error is overruled.

### III. Evidentiary Issues

{¶ 23} Bursey's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED

THE PHOTOS, DRUGS, AND THE JAIL CALLS AT TRIAL.

{¶ 24} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Williams*, 2d Dist. Montgomery No. 26369, 2016-Ohio-322, ¶ 17, quoting *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Thus, a trial court's decision regarding the admissibility of evidence will not be reversed on appeal absent an abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980). The term "abuse of discretion" implies an attitude on the part of the trial court that is arbitrary, capricious or unconscionable. *AAAA Ents., Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 25} Bursey first asserts that the trial court erred by admitting photographs taken by Hoff which depicted the interior of the Jeep and the evidence collected therein. Bursey's main complaints are that the photographs of the Jeep's interior were taken after the contraband was removed and that the pictures of that contraband show it laid neatly on what appears to be a desk or a table. He further claims Hoff had "difficulty" explaining where the contraband was located. Bursey argues this "may [have] confuse[d] the issue of constructive possession." Bursey also contends that, because the actual drugs and

gun were shown to the jury, the photographs were unnecessarily cumulative and prejudicial.

{¶ 26} In accord with Evid.R. 403, a trial court may exclude evidence when its probative value is "substantially outweighed by considerations of undue delay or needless presentation of cumulative evidence. The mere fact that evidence is repetitive will not be considered reversible error unless the defendant was unfairly prejudiced thereby." (Citations omitted.) *State v. Baker*, 2d Dist. Montgomery No. 23933, 2011-Ohio-1820, ¶ 16. "The pertinent question is whether the evidence was unfairly prejudicial to the defendant, not whether it was unfavorable to him." *Id.*

{¶ 27} In this case, photos showing the interior of the Jeep were relevant to Hoff's testimony regarding the location of the gun and drugs. The photos also helped to establish the issues of Hoff's proximity to, and the accessibility of, the gun and drugs, issues relevant to constructive possession. We find no merit in the claim that Hoff had difficulty explaining the photos, and we find no basis for concluding the photos were likely to confuse the jury regarding the issue of constructive possession. Hoff explained that the photos were merely of the Jeep's interior; he did not claim they showed the gun or drug capsules prior to their removal from the Jeep. Further, although the introduction of the photos of the gun and drug capsules was cumulative in that the actual gun and drugs were introduced at trial, we cannot say, and Bursey does not explain, how this resulted in any unfair prejudice. Therefore, we conclude the trial court did not abuse its discretion by allowing the introduction of the photographs.

{¶ 28} Bursey next asserts that the State failed to establish a proper chain of custody regarding the drug capsules. Specifically, he claims that although the capsules

were properly placed in the police property room by Hoff, there was no evidence presented regarding how the capsules were conveyed to the BCI laboratory for testing. Thus, he contends that "alterations, substitution and tampering could have taken place."

{¶ 29} "Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute." *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987), citing *State v. Moore*, 47 Ohio App.2d 181, 353 N.E.2d 866 (9th Dist.1973). "The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." *Id.* "Moreover, a chain of custody can be established by direct testimony or by inference." *In re Lemons*, 77 Ohio App.3d 691, 693, 603 N.E.2d 315 (8th Dist.1991), citing *State v. Conley*, 32 Ohio App.2d 54, 60, 288 N.E.2d 296 (3rd Dist.1971). "The issue of whether there exists a break in the chain of custody is a determination left up to the trier of fact." *Id.*, citing *Columbus v. Marks*, 118 Ohio App. 359, 194 N.E.2d 791 (10th Dist.1963). "Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility." *Id.*

{¶ 30} Hoff testified that he placed the capsules in packaging which he sealed and initialed. He also placed an evidence tag on the package, which he identified as having his writing. The forensic scientist who then tested the capsules at the BCI lab testified that the evidence package was sealed when she received it for testing. She also testified that, when evidence comes into BCI, it is given a barcode with its own case number and item number. Both Hoff and the scientist testified that the capsules admitted at trial were in the packaging sealed and sent to BCI.

{¶ 31} Based upon this evidence, we conclude that although the State did not present direct evidence of the chain of custody regarding who transported the capsules

to BCI from the police property room, the trial court reasonably inferred that the capsules that were tested had not been compromised. Thus, the trial court did not abuse its discretion in admitting the capsules and the testimony regarding those capsules and their contents.

{¶ 32} Finally, Bursey asserts that the trial court erred in admitting recordings purporting to be telephone conversations Bursey had while in jail. The record shows the State presented the testimony of its investigator, Tyson Dillon, who testified that the Montgomery County Jail uses the Pay Tel communication system to record outgoing calls made by inmates. He testified that the system tracks the inmates' numbers and any calls they make. The system generates a spreadsheet which sets forth the inmate number, calls made, date and time of the calls, and the size of the recording file. Dillon further testified that only law enforcement and persons granted special permission are permitted to access the system. He testified he was granted permission to access the spreadsheet and to record two calls made by Bursey from the jail.

{¶ 33} The State then presented its Exhibit 9, which Dillon testified was a CD-R of two calls made by Bursey, which Dillon had downloaded and recorded. Dillon testified that he had placed his initials on the CD-R disk; he then identified his initials and testified that Exhibit 9 was the CD-R of the two telephone calls he created. The State then played the disc from a computer placed near the jury. Afterward, the prosecutor addressed Dillon as follows: "I know that was probably a little difficult for you to hear; could you hear it from where you're at?" Tr. 187. When the prosecutor interjected and asked if it was a fair and accurate recording to the recorded calls, Dillon replied "Briefly, well, yeah - -." Dillon then stated, "[i]t appears to be, yes." *Id.*

{¶ 34} Defense counsel then objected to the introduction of the exhibit. After discussions between the court and counsel, the court sustained the objection. The prosecutor then began to question Dillon again, at which point Dillon indicated that he had not been "able to hear [the recording] very well" when it was initially played for the jury. Tr. 190. The State then replayed the recording, after which Dillon testified that it was a true and accurate recording of the evidence he downloaded from the Pay Tel system. The trial court then admitted the exhibit. We conclude that the error identified by Bursey was properly remedied in the trial court, and thus we find no error in the introduction of the exhibit.

{¶ 35} We also note that Bursey claims the trial court instructed the prosecutor, whom he claims appeared confused concerning how to conduct a proper authentication, as to the correct procedure for doing so. We disagree. Instead, a review of that portion of the transcript demonstrates that the court was merely attempting to clarify the gist of defense counsel's objection, which was originally stated somewhat confusingly but which was ultimately clarified as being a failure to properly authenticate. Thus, any claim of impropriety is without merit.

{¶ 36} Bursey also raises an issue regarding the State's failure to provide evidence "concerning the direct link," "voice recognition," or the day the calls were made. Based upon this, he argues the State did not "lay the proper foundation linking Bursey to the calls." This argument was not presented to the trial court. As such, the issue was not preserved for appellate review.

{¶ 37} The second assignment of error is overruled.

## IV.   Ineffective Assistance

**{¶ 38}** Bursey's third assignment of error is as follows:

COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT TO INADMISSIBLE EVIDENCE AT TRIAL

**{¶ 39}** In order to succeed on an ineffective assistance claim, a defendant must establish that trial counsel's performance was deficient and the deficient performance prejudiced him.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.   The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.   To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688; *Bradley* at 142.   To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different."   *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus.

**{¶ 40}** Bursey asserts counsel was ineffective because he failed to object to the introduction of the drug capsules and to the introduction of the photographs taken by Hoff. However, he admits counsel "may have strategically argued the evidence's faults to the jury, [but] admission of the evidence should have been objected to."

**{¶ 41}** As stated in our discussion of the first assignment of error, the trial court did not abuse its discretion regarding the admission of the photos or the drugs.   The "failure to do a futile act cannot be the basis for [an] ineffective assistance [claim], nor could such

a failure be prejudicial." *State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.), citing *State v. Kilbane,* 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 37. *Accord State v. Ropp,* 2d Dist. Champaign No. 2018-CA-44, 2020-Ohio-824, ¶ 74. As admitted by Bursey, defense counsel argued the claimed deficiencies in the evidence during closing argument. And counsel may well have decided that doing so was a better strategy than making an objection that would almost certainly have been overruled. This court will not second guess "debatable" strategies or tactics used during trial. *Ropp* at ¶ 67.

**{¶ 42}** Because we cannot conclude that the failure to object to the admission of the photos and drugs constituted ineffective assistance of counsel, the third assignment of error is overruled.

## V. Sufficiency and Manifest Weight of the Evidence

**{¶ 43}** The fourth assignment of error asserted by Bursey states:

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN BURSEY'S CONVICTIONS

**{¶ 44}** Bursey's claims the State failed to introduce evidence sufficient to prove he was in possession of either the gun or the drugs.

**{¶ 45}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678

N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted.) *Id.* at paragraph two of the syllabus.

{¶ 46} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. In this situation, a " 'court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 47} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a

finding of sufficiency." (Citations omitted.) *State v. McC*rary, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 48} Another important point is that, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Law*son, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 49} Bursey was convicted of having weapons while under disability, in violation of R.C. 2923.13, and possession of drugs, in violation of R.C. 2925.11(A). R.C. 2923.13 states in pertinent part: "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance * * *." In order to "have" a firearm for purposes of R.C. 2923.13, a person must actually or constructively possess it. *State v. Fleming*, 2d Dist. Clark No. 2014-CA-136, 2015-Ohio-5382, ¶ 26. R.C. 2925.11(A) prohibits a person from knowingly possessing drugs; possession of a drug may be either actual physical possession or constructive possession. *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. "A person acts knowingly, regardless of purpose, when the person is aware that the

person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 50} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession can either be actual or constructive. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). A person has constructive possession of an object when he is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within his immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. Readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession. *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101, ¶ 36 (2d Dist.). In determining whether an individual possessed an item, it is necessary to consider all of the facts and circumstances surrounding the incident. *Mabry* at ¶ 20. Circumstantial evidence and direct evidence have the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 51} Hoff testified that he looked in the passenger window of the Jeep and observed a handgun in Bursey's lap. The jury was free to believe this testimony over that of Bursey and could have reasonably relied on this evidence to determine that Bursey had actual possession of the gun. Additionally, while Hoff was watching the vehicle, he

observed Bursey bend forward and downward as if to conceal something. The handgun was later found under Bursey's seat and, thus, had been within reach of Bursey. Therefore, the evidence also demonstrated that Bursey was in close proximity to the handgun such that he was capable of exercising dominion and control over the gun, which constituted circumstantial evidence that he was in constructive possession of it.

{¶ 52} From a review of the record, Bursey did not have actual possession of the drugs at the time Hoff observed him, but as stated above, the State was not required to prove actual possession. Bursey also asserts the State did not prove constructive possession because his testimony established the Jeep did not belong to him and that he did not place, and had no knowledge of, either the gun or the drugs in the vehicle. When asked by the prosecutor whether he had been involved in obtaining the temporary license tags on the Jeep at the time of the incident, Bursey responded negatively.

{¶ 53} However, the State presented evidence that Bursey was the sole occupant of the Jeep at the time Hoff encountered him. The State further presented evidence that Bursey made a call from jail to a woman whom he instructed to pick up the Jeep at the bar. Bursey later indicated that the Jeep had probably been towed and that she could get the title and money out of his drawer in order to retrieve it from the towing company lot. Bursey also testified that, at his request, an individual he identified as "Day Day" obtained the temporary tags for the vehicle. Finally, he stated he had placed rent money in the driver's door pocket.

{¶ 54} The discussions in the recorded calls belied Bursey's claim that he was merely a passenger in his friend's car at the time they went to the bar. Indeed, based upon the calls, the jury could have reasonably concluded that Bursey did own the Jeep

and that his claim otherwise was not credible. Further, the jury could have inferred from Bursey's statement that he had money in the driver's door pocket that he not only owned the Jeep, but was aware of the contents of the door pocket, which included 16 drug capsules. Finally, the jury could have reasonably found constructive possession of drugs given their close proximity and accessibility to Bursey, who was in the driver's seat of a vehicle which he occupied.

{¶ 55} We conclude the State presented evidence sufficient to demonstrate actual possession of the handgun and constructive possession of the drug capsules. We further find that his convictions for possession of those items were not against the manifest weight of the evidence. Therefore, the fourth assignment of error is overruled.

## VI. Conclusion

{¶ 56} All of Bursey's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
Johnna M. Shia
Hon. Timothy N. O'Connell